A90A0312. VASWANI et al. v. SOUTHERN MORTGAGE & FINANCIAL SERVICES CORPORATION.
(395 SE2d 647)

CARLEY, Chief Judge.
Appellee-plaintiff Southern Mortgage & Financial Services Corporation is an independent mortgage broker. Appellant-defendant Alexander Saunders is a real estate broker who acted as the agent in the purchase by appellant-defendant Lachman Vaswani of two properties. After the two sales closed, appellee filed suit, seeking to recover fees that it had allegedly earned for service performed in connection with the two loans that had been obtained by appellant Vaswani in connection with his purchase of the properties. The case was tried before a jury and a verdict was returned in favor of appellee against both appellants. The trial court entered judgment on the jury's verdict and appellants appeal.

1. Appellant Saunders moved for a directed verdict on the ground that, as the agent for appellant Vaswani, he could not be held personally liable for any fees that might be owed to appellee. The trial court's denial of this motion is enumerated as error.

It is undisputed that appellant Saunders' agency was disclosed. Accordingly, unless the evidence authorized a finding of appellant Saunders' individual liability in his capacity as a disclosed agent, the trial court erred in denying the motion for a directed verdict. See generally *Pearl Assurance Co., Ltd. v. Bernath*, 185 Ga. 737 (2) (196 SE 389) (1938). Appellee urges that, despite the disclosure of the agency, there was a jury question as to whether its credit was expressly given to appellant Saunders and as to whether appellant Saunders had exceeded his authority. See OCGA §§ 10-6-87; 10-6-85. Under either

theory, appellee would be required to prove the existence of an express agreement as to the payment of its fees. In this connection, appellee would have to show either an express agreement on the part of appellant Saunders that he would *personally* pay the fees or an express but *unauthorized* agreement on the part of appellant Saunders that appellant Vaswani would pay the fees.

The evidence shows the following: A mortgage broker, such as appellee, generally does not receive any fee from a borrower, such as appellant Vaswani, or from a real estate agent, such as appellant Saunders. Instead, a mortgage broker generally is paid directly by the lender making the loan. The borrower pays only a loan origination fee that is charged by the lender while the mortgage broker, in turn, is paid by the lender from the loan origination fee that has been charged to and collected from the borrower. Thus, although the borrower may ultimately pay the mortgage broker a fee, he does so only indirectly through his direct payment of the lender's loan origination fee. There is evidence of a deviation from this standard practice in the instant case. Rather than pay any loan origination fee directly to the lender, appellant Vaswani planned to finance that fee and his other closing costs. Accordingly, the purchase price that appellant Vaswani had agreed to pay included the amount of the lender's closing costs and the seller had agreed to pay those costs to the lender. By financing the closing costs, appellant Vaswani thus deviated from the standard practice by paying the lender's loan origination fee indirectly rather than directly.

Insofar as appellee is concerned, however, there is no evidence of an express agreement on the part of appellant Saunders to deviate from the standard practice so that, rather than having to secure the payment of its fees directly from the lender, appellee would, instead, be paid a fee directly by appellants. Appellee's president merely testified that he had been advised by appellant Saunders that appellant Vaswani *"would not pay — would not pay anything* but that if we *put it in the loan,* and [appellee] normally get[s] paid out of discount points, but in this particular situation where [appellee] was going to save them so much money, *they were going to agree to the fee."* (Emphasis supplied.) This evidence may show that a mutual agreement was reached as to the use of appellee's compensated services despite appellant Vaswani's plan to deviate from standard practice and pay no loan origination fee directly to the lender. However, it does *not* show that appellee was ever expressly promised that it would not have to secure its fees directly from the lender, but would receive payment directly from appellants. Other than this testimony, there is only evidence of certain vague reassurances by appellant Saunders that the sales would close and that appellee would, therefore, presumably receive its fees. There was no evidence that appellant Saunders

ever expressly promised that, upon the closings, appellee would receive its fees either directly from him or directly from appellant Vaswani rather than directly from the lender.

Since there was no evidence to authorize a finding that appellant Saunders made any express agreement to deviate from standard practice and accept the lender's responsibility for the payment of appellee's mortgage broker's fees, the motion for a directed verdict should have been granted. " 'A contract is an agreement between two or more parties for the doing or not doing of some *specified* thing.' [Cit.] "Specify" means, "to mention or name in a specific or explicit manner; to tell or state precisely or in detail." (Cit.)' [Cit.] '[The] failure [to produce any evidence] of [an] agreement . . . specify[ing] [that appellee's] fees were to be paid by . . . appellants renders [any] agreement indefinite and unenforceable [as against them]. . . . Since [any] agreement was uncertain, incomplete and unenforceable with regard to . . . the payment of [appellee's] fees, the trial court erred in [failing to grant appellant Saunders' motion for a directed verdict]." (Emphasis in original.) *Poulos v. Home Fed. S & L Assn.*, 192 Ga. App. 501, 503 (2) (385 SE2d 135) (1989).

2. Appellant Vaswani also moved for a directed verdict on the ground that the evidence would not authorize a finding that he was personally liable for appellee's fees. The failure to grant this motion is enumerated as error.

Appellee urges that the evidence authorized it to recover from appellant Vaswani under a quantum meruit theory. "Suit on quantum meruit must proceed, if at all, under [OCGA § 9-2-7]. A suit on quantum meruit is therefore a suit on an implied promise to pay the value of the services rendered." *Sapps v. Davids*, 176 Ga. 265, 267 (1) (168 SE 62) (1933). It follows that " ' "[t]here can be no recovery for services rendered voluntarily and with no expectation at the time of the rendition that they will be compensated, and this is true whether the services were or were not beneficial." ' " *Addison v. Southern R. Co.*, 108 Ga. App. 314, 315-316 (132 SE2d 833) (1963). As discussed in Division 1, there is no implied promise on the part of *the borrower* that he will pay a fee for the services of a mortgage broker. The standard practice is for a mortgage broker to look to *the lender* for payment. Accordingly, appellee cannot recover from appellant Vaswani under a quantum meruit theory because a mortgage broker has no expectation of being compensated by the borrower. See *Addison v. Southern R. Co.*, supra. Compare *Ghee v. Kimsey*, 179 Ga. App. 446, 448 (3A) (346 SE2d 888) (1986); *Mitcham v. Singleton*, 50 Ga. App. 457 (1) (178 SE 465) (1935). Appellee can recover only if the evidence showed the existence of an express promise enforceable against appellant Vaswani that he, rather than the lender, would pay the fees.

As discussed in Division 1, there was no evidence of any *promise*

made by appellant Saunders which would obligate appellant Vaswani for the payment of appellee's fees. Appellee urges, however, that appellant Vaswani himself made an express agreement to pay a $300 fee in connection with one of the loans. The only evidence of this agreement is a document wherein appellee stated and appellant Vaswani acknowledged that appellee's fee would be $300. However, there is nothing whatsoever in the document which signifies appellant Vaswani's agreement that he, rather than the lender, would pay this fee to appellee. The only evidence remotely bearing on whether appellant Vaswani had ever agreed to pay a fee directly to appellee is the above discussed testimony of appellee's president that appellant Saunders had stated that appellant Vaswani "would not pay anything," but would instead finance those lender's closing costs from which appellee would otherwise expect to be paid.

Appellee further urges that it is entitled to recover $250 for a loan application fee that it had advanced to one of the lenders on appellant Vaswani's behalf. While the evidence does show that appellee had given the lender a $250 check for the application fee, the lender never presented appellee's check for payment. Accordingly, appellee cannot recover the $250 that has never actually been paid to the lender on appellant Vaswani's behalf. Moreover, appellee presented no evidence that appellant Vaswani requested, consented to, or ratified appellee's advancement of the lender's loan application fee. See *Ginsberg v. Termotto*, 175 Ga. App. 265, 267 (1) (333 SE2d 120) 1985).

It follows that the trial court also erred in denying appellant Vaswani's motion for a directed verdict. Assuming without deciding that appellee has any viable claim for its unpaid fees, it is a quantum meruit claim against those lenders who in making loans to appellant Vaswani, may have availed themselves of the benefit of appellee's services.

*Judgment reversed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JULY 3, 1990.

*Dailey & Groover, Lewis M. Groover, Jr.*, for appellants.
*Ronald C. Harrison, Patrick J. Gibbs*, for appellee.

